[Cite as *State v. Hubbard*, 2026-Ohio-2946.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                                    No. 115939

    v.                               :

CORDELL HUBBARD,                         :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-03-435700-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellee.*

Cordell Hubbard, *pro se.*

SEAN C. GALLAGHER, J.:

{¶ 1} Cordell Hubbard appeals the denial of his latest attempt to reopen his two-decades-old conviction for the murder of Omar Clark ("Clark"). For the

following reasons, we affirm the trial court's denial of the motion for leave to file a motion for new trial under Crim.R. 33.[1]

{¶ 2} The facts of this case have been dissected many times over and need not be repeated in detail. *State v. Hubbard*, 2020-Ohio-2726 (8th Dist.) (denying motion for leave to file a motion for a new trial); *State v. Hubbard*, 2016-Ohio-918 (8th Dist.) (attempting to reopen the appellate judgment rendered in *State v. Hubbard*, 2004-Ohio-4627 (8th Dist.)); *State ex rel. Hubbard v. Fuerst*, 2010-Ohio-2489 (8th Dist.) (mandamus action against Cuyahoga County Clerk of Courts to compel him to release the final jury verdict forms in *State v. Cordell Hubbard*, Cuyahoga C.P. No. CR-435700); *State v. Hubbard*, 2004-Ohio-4627 (8th Dist.*); see also State v. Sailor*, 2021-Ohio-2277 (8th Dist.); *State v. Sailor*, 2014-Ohio-1062 (8th Dist.); *State ex rel. Sailor v. McDonnell*, 2009-Ohio-4378 (8th Dist.); *State v. Sailor*, 2004-Ohio-5207 (8th Dist.). It suffices that in 2002, Cordell and Nichole Hubbard (siblings) were involved in an altercation with Clark over a $20, PCP-laced cigarette that led to Hubbard shooting Clark 11 times and causing serious injury to another victim. Hubbard was convicted of complicity to commit aggravated murder, among other offenses, and sentenced to serve a life sentence with the possibility of parole after 28 years.

---

[1] The trial court also denied a successive petition for postconviction relief filed simultaneously with the motion for leave, but Hubbard does not include that denial in this appeal.

{¶ 3} Sailor, a friend of Hubbard's, provided a fabricated alibi for the two. *Sailor*, 2004-Ohio-5207 at ¶ 2. Sailor claimed that he was with Hubbard the entire night of the shooting, that neither of them had been present at the scene of the shooting, and that they had spent most of their time inside a bar — finally ending their evening at 4:00 a.m. after the shooting had occurred. *Id.* at ¶ 20. In addition to Sailor's testimony, the surviving victim identified Sailor as the shooter and Hubbard as the person he was arguing with about the $20, among other witnesses doing the same. *Id.* at ¶ 5-6. This led the jury to convict Sailor as the principal offender.

{¶ 4} Before Sailor's sentencing hearing, Hubbard prepared an affidavit swearing that he shot and killed Clark in self-defense and that Sailor was not present. *Id.* at ¶ 45; *State v. Hubbard*, 2020-Ohio-2726, ¶ 9 (8th Dist.). Hubbard had not presented self-defense as a claim during his trial. *See generally Hubbard*, 2004-Ohio-4627. Hubbard's affidavit was offered as "newly discovered" evidence in Sailor's effort to obtain a new trial, with Sailor feigning ignorance as to Hubbard's involvement in Clark's murder. *See Sailor*, 2004-Ohio-5207 at ¶ 22.

{¶ 5} In 2017, after Sailor served 15 years on the murder conviction, the Cuyahoga County Prosecutor's Conviction Integrity Unit evaluated Sailor's case. Sailor was exonerated of any involvement in the murder for which he was found guilty based on testimony from one eyewitness recanting his identification of Sailor as the shooter and Hubbard's affidavit confessing to the murder. *Sailor*, 2021-Ohio-2277, ¶ 2 (8th Dist.). According to Sailor, he only discovered Hubbard's involvement

in Clark's murder after the convictions, which was how he explained lying under oath regarding Hubbard's innocence — he claims to have testified based on an honest belief that Hubbard was with Sailor on the night of Clark's murder. This led to Sailor's murder conviction being vacated and Sailor pleading guilty to perjury and obstructing justice — receiving a ten-year sentence deemed complete based on the time already served. *Id.* at ¶ 4.

{¶ 6} Sailor's wrongful-conviction narrative, however, aged poorly. *See Sailor v. City of Cleveland, et al.*, Case No. 1:20-CV-660 (N.D. Ohio 2026).[2] Following Sailor's release from prison, Sailor filed an action against the city of Cleveland claiming misconduct by its officers leading to his wrongful conviction. *Id.* The State discovered Sailor's wrongful-conviction narrative to be based on what the federal court described as fraud: "The uncontroverted evidence cited herein demonstrates that [Sailor] has knowingly engaged in a twenty-plus year fraud through court proceedings, depositions, affidavits, and in the public media, to hide the fact that from the beginning he knew the details of Omar Clark's murder . . . ." *Id.* Hubbard confessed to Sailor on the night of Clark's murder, with Sailor admitting to his knowledge of Hubbard's guilt in recorded conversations between him, Hubbard, and others before testifying at the joint trial. *Id.*

---

[2] The federal district court resolved a motion to dismiss, and for the purposes of this appeal, the merits of that decision from a legal perspective are irrelevant to the undisputed facts relied on by the court. The facts discussed in that decision weigh on the claims Hubbard advances here, which are primarily focused on his allegations of police misconduct that led to Sailor's murder conviction.

{¶ 7} Thus, Sailor's trial testimony was fabricated, an attempt to exonerate him and Hubbard of Clark's murder. At the time of the recorded conversations, Sailor expressed concern that his knowledge of Hubbard's guilt would obviate the wrongful-imprisonment and police-misconduct claims and that information was omitted by those wanting to push a different narrative. *Id.* Compounding the issue, the undisputed evidence considered by the federal court demonstrated that Sailor and his wife arranged to pay an eyewitness to recant the in-court identification of Sailor. *Id.* At the time of Sailor's conviction being vacated, the State was unaware that Sailor's purported alibi for Hubbard was to knowingly conceal Hubbard's involvement in the murder after the fact. *Id.*

{¶ 8} This backstory provides context for Hubbard's current claim, that the supposed police misconduct in pursuing Sailor as the principal offender tainted Hubbard's trial, with his guilt at the time being based on complicity. To this end, Hubbard cites a "newly discovered" report in which a vice detective, assisting in the investigation of Clark's murder, recounted a conversation with an informant who implicated Sailor as the person responsible for Clark's death — similar to the evidence introduced at trial. The report detailed the detective's attempt to investigate further. *See id.* Hubbard relies on it to claim that the State wrongfully withheld "exculpatory" evidence because it was the information in the report that led to Sailor's indictment and the failure to produce that specific report impacted Hubbard's conviction for complicity to commit murder. In other words, according to Hubbard, the knowledge of the State's intent to indict Sailor as the shooter and

Hubbard as being complicit would have aided Hubbard's trial theory that Hubbard was not involved in the murder of Clark.

{¶ 9} The specifics of how the report would have aided Hubbard's defense are left unexplained, especially considering Hubbard's sworn confession to shooting Clark in aid of Sailor's quest to be exonerated. The so-called new evidence in the uncovered police report, at best, implicates Sailor as a potential person of interest — a fact well known to Hubbard well before trial and a fact known not to be true based on Hubbard's post-verdict confession.

{¶ 10} A party who fails to file a timely motion for new trial must seek leave from the trial court to file a delayed motion for new trial. *State v. Murphy*, 2021-Ohio-3925, ¶ 25 (8th Dist.), citing *State v. Hale*, 2019-Ohio-1890, ¶ 9 (8th Dist.). We review a trial court's denial of leave to file an untimely motion for new trial for an abuse of discretion. *State v. Briscoe*, 2021-Ohio-4317, ¶ 19 (8th Dist.), citing *State v. Sutton*, 2016-Ohio-7612, ¶ 13 (8th Dist.). In determining whether leave should be granted under Crim.R. 33, the offender must "demonstrate by clear and convincing proof that he or she was unavoidably prevented from filing the motion for a new trial." *State v. Hale*, 2023-Ohio-3894, ¶ 20 (8th Dist.). Importantly, "'[w]hen a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave.'" *Id.*, quoting *State v. Hatton*, 2022-Ohio-3991, ¶ 30, and *State v. Bethel*, 2022-Ohio-783, ¶ 41. "'The sole question before the trial court when considering whether to grant leave is whether the defendant has

established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial.'" *Id.*, citing *Hatton* at ¶ 30.

{¶ 11} A defendant is "unavoidably prevented" from discovering new evidence if he "'had no knowledge of the existence of the ground' supporting the new-trial motion and could not have learned of the existence of that ground within the time prescribed for filing a new-trial motion." *State v. Lenard*, 2023-Ohio-4529, ¶ 10 (8th Dist.), quoting *State v. Conner*, 2016-Ohio-301, ¶ 21 (8th Dist.). Under binding black-letter law, "[a] defendant cannot claim that evidence was undiscoverable merely because the defendant or his defense counsel did not undertake to obtain the evidence sooner." *Id. at* ¶ 13, citing *State v. Jackson*, 2019-Ohio-4893, ¶ 20 (8th Dist.), citing *State v. Cashin*, 2017-Ohio-9289 (10th Dist.). "'[I]f a defendant is aware of the evidence at the time of trial, then it is not newly discovered evidence under Rule 33.'" *State v. Ambartsoumov*, 2013-Ohio-3011, ¶ 23 (10th Dist.), quoting *United States v. Sims*, 72 Fed.Appx. 249, 252 (6th Cir. 2003).

{¶ 12} Hubbard cannot demonstrate that he was unavoidably prevented from discovering evidence that Sailor was initially identified by an unidentified informant as the principal actor. That was the State's theory at the time of trial based on eyewitness testimony. Hubbard was well aware of the State's claims against Sailor, and more importantly, Hubbard has since stated under oath that he shot Clark. *See Hubbard v. Foley*, 2022 U.S. Dist. LEXIS 10887, at *23 (N.D.Ohio

Jan. 5, 2022). That Hubbard knowingly permitted Sailor to perjure himself in his defense does not complicate this review. The information in the police report implicating Sailor as the shooter is irrelevant to Hubbard's conviction and was undisputedly within Hubbard's knowledge at the time of trial. He therefore was not unavoidably prevented from discovering the evidence.

{¶ 13} The trial court did not err in denying the motion for leave. That decision is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR